KILPATRICK TOWNSEND & STOCKTON LLP
DENNIS L. WILSON (Bar No. 155407)
DWilson@kilpatricktownsend.com
CAROLINE Y. BARBEE (Bar No. 239343)
CBarbee@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
Telephone:   310-248-3830
Facsimile:  310-860-0363

Attorneys for Plaintiffs
FACEBOOK, INC. and GUCCI AMERICA, INC.

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
JOHN P. MARGIOTTA (*pro hac vice* application to be filed)
jmargiotta@fzlz.com
NICOLE LIEBERMAN (*pro hac vice* application to be filed)
nlieberman@fzlz.com
151 W. 42nd Street, 17th Floor
New York, NY 10036
Telephone: 212-813-5900
Fax: 212-813-5901

Attorneys for Plaintiff
GUCCI AMERICA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation, and GUCCI AMERICA, INC., a New York corporation | CASE NO. 3:21-cv-3036 |
| Plaintiffs, | **COMPLAINT; DEMAND FOR JURY TRIAL** |
| v. | |
| Natalia Kokhtenko, | |
| Defendant. | |

Plaintiffs Facebook, Inc. ("Facebook") and Gucci America, Inc. ("Gucci") assert the following:

## INTRODUCTION

1.      Facebook and Gucci jointly bring this action in response to Defendant's unlawful use of Facebook and Instagram to perpetuate an online counterfeiting business that sells, among other imitated brands, fake Gucci products. Since at least April 2020 and continuing until at least April 26, 2021, Defendant Natalia Kokhtenko has operated an international online business, trafficking in illegal counterfeit goods. Defendant used Facebook and Instagram to promote her websites selling counterfeit products, including counterfeit Gucci-branded handbags, shoes, clothing, and accessories, in violation of Facebook and Instagram's terms and policies. Facebook has previously disabled Defendant's accounts and removed posts for promoting the sale of counterfeit goods in violation of Facebook's and Instagram's terms and policies, which prohibit violating the intellectual property rights of others. Despite Facebook's enforcement efforts, Defendant continued to use Facebook and Instagram to promote the sale of Gucci-branded counterfeit goods and the unauthorized use of several of Gucci's registered trademarks, including its house mark GUCCI, a number of Gucci's stylized Gucci and GG marks, and Gucci's Green/Red/Green Signature Webbing.

2.      Facebook brings this action to stop Defendant's ongoing violation of Facebook's and Instagram's terms and policies. Gucci brings this action to stop Defendant's continuing trademark infringement and counterfeiting under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition under California State Law, Cal. Bus. & Prof. Code §§ 17200 et seq; and unfair competition under California common law.

## PARTIES

3.      Plaintiff Facebook, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California. Facebook products include the Facebook and Instagram apps.

4.      Plaintiff Gucci America, Inc. is a New York corporation with its principal place of business in New York, New York.

5.      Defendant Natalia Kokhtenko is a citizen and resident of Moscow, Russia. Defendant used multiple aliases and online monikers, including "AgentRomanova," "Brends-MSK,"

"gucci_sumo4kina_," "Luxprime," "Luxprimer," "Luxprimes," "luxprime_gucci," "Natalia Sumochkina," "Natalya Romanova," "Romanova," "Sumo4kina," and "sumo4kina_shop1."

6.      Defendant used multiple Facebook and Instagram accounts to promote her online stores available at brends-msk.ru, luxprimer.ru[1], and agentromanova.ru (collectively, "Defendant Websites"), where she operated an international business that sold counterfeit goods, including counterfeit Gucci-branded products, in violation of Facebook and Instagram's terms and policies. Defendant's Websites specifically promoted "luxury copies," "fashion from pirates," "high-precision copies of branded clothing," and copies that are "difficult . . . to distinguish [Defendant's] copies from the originals" for various brands, including Gucci. **Exhibit 1.** The Defendant Website brends-msk.ru referred to Defendant as the "founder, ideological inspirer, and director" of her counterfeit business. **Exhibit 2**.

## **JURISDICTION AND VENUE**

7.      The Court has federal question jurisdiction over the federal causes of action alleged in this Complaint pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a).

8.      The Court has supplemental jurisdiction over the state law causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative fact as the federal claims.

9.      The Court also has jurisdiction over all the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 because complete diversity between the Plaintiffs and Defendant exists, and because the amount in controversy exceeds $75,000.

10.     Defendant had multiple Facebook accounts and thereby agreed to Facebook's Terms of Service ("TOS") and Commercial Terms. The Court has personal jurisdiction over Defendant because Facebook's TOS and Commercial Terms both contain a forum selection clause that requires this complaint be resolved by this Court, and that Defendant submit to the personal jurisdiction of this Court.

/ / /

---

[1] As of April 14, 2021, each of the domains luxprime.ru, lux-prime.ru, luxprimes.ru, and lux-prime.ru re-direct to the domain luxprimer.ru.

11.     Defendant also agreed to the Instagram Terms of Use ("TOU") (collectively with the Facebook TOS, the "Terms"). The Instagram TOU contain a forum selection clause that requires this complaint be resolved by this Court, and that Defendant submit to the personal jurisdiction of this Court.

12.     In addition, the Court has personal jurisdiction over Defendant because she knowingly directed and targeted her actions at California and at Facebook, which has its principal place of business in California. Defendant transacted business and engaged in commerce in California by, among other things, accepting payment via a California-based payment service and hosting the Defendant Websites on a California-based hosting provider. Defendant promoted her ability to ship counterfeit goods to the United States and shipped counterfeit goods to California. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged occurred in this District. Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court's personal jurisdiction. Venue is also proper with respect to Defendant pursuant to 28 U.S.C. §1391(c)(3) because no defendant resides in the United States.

13.     Pursuant to Civil L.R. 3-2(c), this case may be assigned to either the San Francisco or Oakland division because Facebook is located in San Mateo County.

## FACTUAL ALLEGATIONS

### A.     Background on Facebook and Instagram

14.     Facebook offers a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices. As of December 2020, Facebook daily active users averaged 1.84 billion and monthly active users averaged 2.80 billion, worldwide. Facebook has several products, including Instagram.

15.     Instagram is a photo and video sharing service, mobile application, and social network. Instagram is owned and operated by Facebook, Inc. Since April 2018, the Instagram TOU have stated that Instagram is a Facebook product and that the TOU constitute an agreement between Instagram users and Facebook.

16.     Instagram users can post photos and videos to their profile. They can also view, comment on, and like posts shared by others on Instagram. As of 2020, Instagram had over one billion active accounts worldwide.

**B.     Facebook's and Instagram's Terms and Policies (the "Terms")**

17.     All Facebook users agree to Facebook's TOS (available at https://www.facebook.com/terms/php) and other rules that govern access to and use of Facebook, which also include the Facebook Commercial Terms. Facebook Commercial Terms apply to access and use of Facebook, Instagram, and other Facebook Products for any business or commercial purpose.

18.     All Instagram users agree to Instagram's TOU (available at https://help.instagram.com/478745558852511/?helpref=hc_fnav) and to other rules that govern access to and use of Instagram.

19.     Section 3.1 of the Facebook TOS requires users to "[c]reate only one account ([their] own)" and use that account "for personal purposes," and prohibits users from using Facebook if Facebook "previously disabled [a user's] account for violations of [the TOS] or [Facebook] Policies."

20.     Section 3.2.1 of the Facebook TOS prohibits users from: (a) doing anything "unlawful, misleading, [] or fraudulent"; (b) doing anything that "infringes or violates someone else's rights, including their intellectual property rights"; and (c) "breach[ing] [the Facebook TOS], [Facebook] Community Standards, and other Terms and Policies that apply to [a user's] use of Facebook."

21.     Section 3.2.3 of the Facebook TOS prohibits users from "access[ing] or collect[ing] data from [Facebook] Products using automated means (without [Facebook's] prior permission)."

22.     Section 3.2 of the Facebook TOS authorizes Facebook to remove content of users who "seriously or repeatedly violate the[] [TOS]" without giving the user an opportunity to "request [] review."

/ / /

/ / /

COMPLAINT; DEMAND FOR JURY TRIAL                                                          - 4 -
CASE NO. 3:21-cv-3036

23. Section 2 of the Facebook Commercial Terms requires users to "represent and warrant" that "access or use of Facebook Products for business or commercial purposes complies with all applicable laws, rules, and regulations."

24. Instagram's TOU also prohibit users from (a) "do[ing] anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose"; (b) "do[ing] anything that violates someone else's rights, including intellectual property"; (c) "attempt[ing] to create accounts or access or collect information in unauthorized ways," "includ[ing] creating accounts or collecting information in an automated way without our express permission"; (d) "violat[ing] . . . [Instagram] Terms or [Instagram] policies"; and (e) using Instagram if Facebook "previously disabled your account for violation of law or any of [Instagram's] policies."

### C.    Facebook's Measures to Protect Intellectual Property Rights

25. Facebook prohibits Facebook and Instagram users from posting content that infringes third parties' intellectual property rights, including copyright infringement, trademark infringement, and the promotion, sale, or advertisement of counterfeit goods. Facebook TOS, Section 3.2.1; Instagram TOU ("How You Can't Use Instagram"). Facebook has a variety of measures and tools in place to help people and organizations protect their intellectual property rights across its products and services and to combat infringements, including counterfeits, on its products and services.

26. Facebook operates a global notice-and-takedown program that provides dedicated communication channels for rights holders to report posts or other user-generated content they believe to be infringing, including content on Facebook and Instagram that promotes, advertises, or sells counterfeit goods. Facebook makes available publicly-accessible reporting forms to streamline and expedite the reporting of intellectual property violations, including a form for reporting counterfeits specifically (available at https://www.facebook.com/help/contact/628238764025713).

27. Facebook employs a global team to review these reports. If a report is complete and valid, Facebook promptly removes the reported content (*e.g.*, disables a violating account or removes a violating post). In addition, Facebook notifies both the rights holder and the violating user of the fact of and reason for the removal. In the first half of 2020, Facebook and Instagram removed more than one million posts or other user-generated content based on reports of counterfeit goods.

28.    Even where a report identifies a single post (for example, a photograph on a Facebook or Instagram account), typically Facebook reviews the entire account. If there is evidence of widespread infringement, rather than remove only the reported post, Facebook disables the account. Likewise, Facebook disables the accounts of Facebook and Instagram users who repeatedly violate the Terms prohibiting violations of the intellectual property rights of others. This "repeat infringer" policy applies to numerous surfaces, including Facebook accounts, Pages, groups, ad accounts, and Instagram accounts. When a repeat infringer's account is disabled, Facebook informs the user that they are no longer permitted to use its service.

**D.     Gucci's Rights and Anti-Counterfeiting Efforts**

29.    The Gucci brand, originally founded in 1921 in Florence, Italy, is one of the best-known and most valuable global brands.

30.    The Gucci brand, which is celebrating its 100th anniversary this year, is one of the most renowned and influential fashion and luxury brands in the world, a genuine global reference for fashion and accessories, sustainability, and inclusion and a benchmark for a modern, innovative business.

31.    Gucci is renowned for eclectic and contemporary creations that represent the pinnacle of Italian craftsmanship and are unsurpassed in quality, attention to detail, and imaginative design.

32.    Gucci first used the GUCCI name and mark in the United States in 1953, when it introduced Americans to Italian fashions by opening its pioneering New York City flagship store. Today, Gucci distributes leather goods, clothing, accessories, eyewear, footwear, home decor, lifestyle products, jewelry, and watches, among many other products, in the United States under the GUCCI mark and related iconic design marks, including the stylized GUCCI marks, Gucci's stylized GG designs and Green/Red/Green Signature Webbing shown below (collective with the mark GUCCI, the "Gucci Marks"):

/ / /

/ / /

/ / /

/ / /



33.     Today, Gucci owns/operates nearly 100 GUCCI-branded retail boutiques throughout the United States where it sells its products branded with the Gucci Marks. Gucci also sells its products through its official website, www.gucci.com/us/, and through select high end department stores, such as Saks Fifth Avenue, Nordstrom, and Bloomingdale's.

34.     Each year, Gucci spends millions of dollars on advertising to promote the goods and services offered under the Gucci Marks in the United States. As a result of Gucci's efforts and the appeal of the GUCCI brand, Gucci sells high quantities of consumer goods annually in the United States.

35.     By virtue of extensive sales, advertising, and promotion, the Gucci Marks have become instantly recognizable to the public as exclusively denoting Gucci as the source of products bearing, and sold under, the Gucci Marks and signaling the high quality of such products. Having acquired substantial goodwill and strong secondary meaning, the world-famous Gucci Marks are enormously valuable assets of Gucci.

36.     Along with its robust common law rights in the famous Gucci Marks, Gucci also owns numerous federal registrations for the Gucci Marks, including:

/ / /

/ / /

/ / /

| Mark | Reg'n No. | Reg'n Date | Class and Goods/Services |
|---|---|---|---|
| GUCCI | 876,292 | 09/09/1969 | IC 6: Vacuum bottles, vanity cases sold empty<br>IC 18: Pocketbooks, wallets, travel and duffel bags, attache cases, toilet cases sold empty and shoe bags<br>IC 25: Shoes and boots |
| GUCCI | 1,168,477 | 09/08/1981 | IC 25: Neckties; scarves; belts; footwear; shirts; sweaters; coats; suits; dressing gowns; hats; socks; dresses and bathing Suits |
| GUCCI | 4,563,132 | 07/08/2014 | IC 18: Handbags, shoulder bags, clutch bags, tote bags, briefcases, business card cases, credit card cases, backpacks, key cases, passport cases, cosmetic cases sold empty, valises, suitcases, luggage, all the foregoing being made in whole or in part of leather; pet accessories, namely, carriers, collars and leashes; pet collar accessories, namely, charms |
| GUCCI | 4,407,149 | 09/24/2013 | IC 9: Sunglasses and cases for sunglasses |
| GUCCI | 5,535,081 | 08/07/2018 | IC 3: Incense sticks<br>IC 4 : Candles<br>IC 20: Throw pillows, cushions, chairs, armchairs, folding floor screens and tables<br>IC 21: Incense burners, mugs, cups, trays for household purposes<br>IC 27: Wallpaper |
| GUCCI | 5,921,104 | 11/26/2019 | IC 9: Cases and covers for mobile phones<br>IC 18: Handbags; shoulder bags; messenger bags; tote bags; clutch bags; backpacks; duffle bags; wallets; business card cases; leather credit card cases and holders; pouches of leather<br>IC 25: Clothing, namely, tops as clothing, scarves, footwear, headwear; children's and infants' cloth bibs |
| GUCCI | 5,921,105 | 11/26/2019 | IC 9: Cases and covers for mobile phones<br>IC 14: Keyrings<br>IC 18: Handbags; shoulder bags; messenger bags; tote bags; clutch bags; backpacks; duffle bags; wallets; business card cases; leather credit card cases and holders; pouches of leather<br>IC 25: Clothing, namely, tops as clothing, scarves, footwear, headwear; children's and infants' cloth bibs |
| G U C C I | 6,073,427 | 06/09/2020 | IC 3: Fragrances, incense, cosmetics, nail polish<br>IC 4: Candles |

| Mark | Reg'n No. | Reg'n Date | Class and Goods/Services |
|---|---|---|---|
| | | | IC 9: Sunglasses, eyeglasses, cases for sunglasses, cases for eyeglasses, mobile phone cases, cases for computers, cases for tablet computers, computer application software for all mobile devices, namely, downloadable software for providing information in the field of fashion, the arts and lifestyle |
| | | | IC 14: Jewelry, watches, key rings, cuff links, tie bars |
| | | | IC 18: Pocketbooks, handbags, shoulder bags, clutches, wristlet bags, coin purses, wallets, credit card cases, business card cases, tote bags, backpacks, diaper bags, cosmetic bags sold empty, luggage |
| | | | IC 20: Throw pillows, cushions, chairs, armchairs, folding floor screens and tables |
| | | | IC 21: Incense burners, mugs, cups, trays for household purposes, porcelain pots and vases, dishes, sugar bowls, creamer pitchers, chargers being dinnerware, non-electric coffee pots, non-electric tea pots |
| | | | IC 25: Tops as clothing, bottoms as clothing, coats, jackets, suits, dresses, jumpsuits, bathing suits, scarves, ties as clothing, belts, gloves, headwear, footwear, tights, socks, stockings |
| | | | IC 27: Wallpaper |
| | | | IC 35: Retail store services for clothing, footwear, fashion accessories, jewelry, watches, handbags, sunglasses, fragrances, home furnishings and accessories; online retail store services for clothing, footwear, fashion accessories, jewelry, watches, handbags, sunglasses, fragrances, home furnishings and accessories |
| | | | IC 41: Providing entertainment news and information in the fields of fine art, film, music, theater, and dance through an Internet website portal and social media sites entertainment services, namely, organizing sporting and cultural events |
| | | | IC 45: Providing news and information in the fields of fashion and personal lifestyles through an Internet website |
|  | 1,158,170 | 06/23/1981 | IC 25: Clothing-Namely, Neckties, Scarves, Belts, Footwear, Shirts, Coats, Hats, Dresses, and Bathing Suits |

| Mark | Reg'n No. | Reg'n Date | Class and Goods/Services |
|------|-----------|------------|--------------------------|
|  | 1,464,522 | 11/10/1987 | IC 14: watches, cufflinks, made or coated with precious metal, bracelets, pendants, earrings, made or coated with precious metals, rings, and necklaces |
|  | 3,376,129 | 01/29/2008 | IC 18: Wallets, purses, handbags, shoulder bags, tote bags, business card cases, credit card cases, partly and wholly of leather, suitcases and duffles |
|  | 4,567,107 | 07/15/2014 | IC 9: Protective covers and cases for mobile electronic communications devices and computers; cell phone straps<br>IC 18: Shoulder bags, clutch bags, backpacks, document cases, cosmetic cases sold empty, briefcases, suitcases, general purpose trolley bags, laptop carrying cases, luggage, duffle bags, tote bags, all of the foregoing being made in whole or in part of leather |
|  | 3,470,140 | 07/22/2008 | IC 6: metal key rings<br>IC 14: Jewelry, namely, earrings, pendants, rings, necklaces and watches; key rings of precious metal<br>IC 25: Apparel, namely, neckties, scarves, shirts, sweaters, coats, hats, dresses, bathing suits, and gloves |
|  | 3,039,629 | 01/10/2006 | IC 25: footwear and belts |
|  | 5,073,022 | 11/01/2016 | IC 18: handbags and wallets<br>IC 25: belts and footwear |
|  | 4,220,947 | Oct. 09, 2012 | Class 14: Jewelry<br>Class 18: Wallets, purses, handbags, shoulder bags, clutch bags, tote bags, business card cases, credit card cases partly and wholly of leather, key cases, cosmetic cases sold empty, briefcases, attaché cases, valises, suitcases and duffel bags<br>Class 25: Neckties, scarves, belts, footwear and gloves |
|  | 4,583,258 | 08/12/2014 | IC 9: Protective covers and cases for mobile electronic communications devices and computers; computer cases made of leather<br>IC 14: Watches<br>IC 18: Backpacks, general purpose trolley bags; baby bags, namely, bags for carrying babies' accessories<br>IC 25: Clothing, namely, shirts and jackets |

COMPLAINT; DEMAND FOR JURY TRIAL                                          - 10 -
CASE NO. 3:21-cv-3036

| *Mark* | *Reg'n No.* | *Reg'n Date* | *Class and Goods/Services* |
|---|---|---|---|
|  | 4,229,081 | 10/23/2012 | IC 14: Jewelry<br>IC 18: Wallets, purses, handbags, shoulder bags, clutch bags, tote bags, business card cases, credit card cases partly and wholly of leather, key cases, cosmetic cases sold empty, briefcases, attaché cases, valises, suitcases and duffel bags<br>IC 25: Neckties, scarves, belts, footwear and gloves |
|  | 3,072,549 | 03/28/2006 | IC 18: Wallets, purses, handbags, shoulder bags, clutch bags, tote bags, business card cases, credit card cases, partly and wholly of leather, key cases, cosmetic cases sold empty, briefcases, attaché cases, valises, suitcases and duffles |
|  | 3,072,547 | 03/28/2006 | IC 25: neckties, scarves, belts, footwear and gloves |
|  | 5,421,749 | 03/18/2013 | IC 18: Backpacks; briefcases and messenger bags |
|  | 4,567,112 | 07/16/2015 | IC 9: Eyeglasses and sunglasses; protective covers and cases for mobile electronic communication devices and computers; cell phone straps; computer carrying cases<br>IC 14: Jewelry and key rings of precious metal<br>IC 18: Cosmetic cases sold empty, luggage, duffle bags |
|  | 4,379,039 | 08/06/2013 | IC 25: Shorts, pants, jeans, leggings, t-shirts, polo shirts, shirts, sweaters, sweatshirts, dresses, skirts, swimwear, one piece garments for infants and toddlers, cloth bibs, scarves, ties, hats, gloves, belts |

37.     Printouts detailing the registration information for the above marks are attached hereto as **Exhibit 3**. The above-referenced registrations are valid, well-known, subsisting, and in full force, and serve as prima facie evidence of Gucci's exclusive rights in and to the Gucci Marks. Additionally, several of the registrations referenced have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus constitute conclusive evidence of Gucci's exclusive right to use these marks on the goods specified in the registrations pursuant to Sections 7 and 33 of the Lanham Act, 15 U.S.C. §§ 1057, 1115(b).

38.     Gucci is committed to protecting and safeguarding its intellectual property rights and assets in order to ensure that Gucci's unique and valuable creativity and heritage is preserved, safeguarded, and enforced. Gucci invests substantial time and resources to intellectual property enforcement programs and strategies that protect consumers and clients from counterfeit and infringing products sold online and offline.

39.     Gucci values intellectual property rights and maintains a strong and consistent approach which combats counterfeiting at the manufacturing, distribution, promotion, and selling levels and across channels and platforms. Gucci actively cooperates and collaborates with Customs and other law enforcement agencies in the US and around the world to identify and combat counterfeiting and it routinely pursues legal action to stop online counterfeiting operations, networks, and clusters.

40.     Gucci regularly monitors websites, including social media, online marketplaces, and physical stores to detect and stop infringements. Among its many enforcement partnerships, Gucci works cooperatively with platforms such as Facebook and Instagram, as well as retailers, to identify and remove counterfeit goods.

41.     Through the efforts of a dedicated and skilled in-house team and through significant investments, Gucci has implemented a best-in-class approach to its trademark enforcement, and continues to innovate in this field.

42.     Gucci, along with its affiliates, successfully seizes millions of units' worth of counterfeit products each year, and disables countless online accounts and infringing online listings as part of its enforcement efforts.

43.     Partnering with Facebook, Gucci is bringing this action to deter the repeated counterfeiting of Defendant, who is running a sophisticated counterfeiting scheme to sell replica GUCCI goods at high price points for counterfeits.

**E.     Overview of Defendant's Counterfeiting Business**

44.     Since at least April 2020, Defendant has used a web of Facebook and Instagram accounts to promote her business and direct traffic to her Websites in violation of the Terms. On her / / /

Websites, Defendant sold "high-precision copies of branded clothing . . . at mass market prices," "luxury copies," and "pirate[d]" fashions. **Exhibit 1**.

45.     As of October 2020, the Defendant Websites listed dozens of counterfeit products for sale organized by designer brand name, including Gucci. **Exhibit 4**. On her Websites, as well as on Facebook and Instagram, Defendant has used spurious marks that are identical to, or substantially indistinguishable from, or are otherwise confusingly similar to the Gucci Marks, without Gucci's authorization. Defendant has used these spurious marks in connection with a wide array of products, including jackets, shirts, sweaters, sweatshirts, skirts, scarves, belts, footwear, hats, face masks, handbags, backpacks, watches, sunglasses and bedding.

46.     Defendant offered and sold Gucci-branded goods that were not genuine products of Gucci and that were materially different from Gucci's genuine products. Further, Defendant was not an authorized reseller of authentic Gucci goods. Defendant's actions were not approved by Gucci.

**F.     Defendant Accepted the Facebook and Instagram Terms**

47.     Between at least April 2011 and April 26, 2021, Defendant accepted and was bound by the Terms. Defendant created and used multiple Facebook accounts, Facebook Pages, and Instagram accounts and agreed to the Facebook TOS and Commercial Terms, and the Instagram TOU. In total, Defendant operated more than five Facebook accounts and more than 150 Instagram accounts across multiple devices. Several of these Instagram accounts included the word "Gucci" in the username, including "luxprime_gucci" and "gucci_sumo4kina_."

**G.     Defendant Promoted the Sale of Counterfeit Goods in Violation of the Terms**

48.     Between at least April 2020 and April 26, 2021, Defendant used her web of Facebook and Instagram accounts to advance her counterfeit business and publish posts promoting counterfeit goods offered for sale on the Defendant Websites. Defendant used Gucci-branded products in these promotional posts.

49.     For example, on December 7, 2018, Defendant and her counterfeit business created an Instagram account with the username "luxprime_gucci," which Defendant used to promote the Defendant Website www.lux-prime.ru. **Figure 1** is a screenshot of the account bio including a link

to Defendant's Website, contact information for the Defendant, and a Gucci-branded handbag in the profile picture. On April 21, 2021, Facebook disabled the "luxprime_gucci" account for violating Instagram's TOU against violating third parties' intellectual property rights.

**Figure 1: Defendant's Counterfeit Gucci Handbag and Instagram Account Bio[2]**



50.     On November 6, 2019, Defendant and her counterfeit business created an Instagram account with the username "gucci_sumo4kina_." Between May 21, 2020 and September 5, 2020, this account published posts promoting Gucci-branded bedding, t-shirts, and sneakers offered for sale on Defendant's Website www.brends-msk.ru. **Figure 2** is a screenshot of a May 21, 2020 post including a link to the Defendant Website, contact information for the Defendant, and Gucci-branded bedding. On January 26, 2021, Facebook disabled the "gucci_sumo4kina_" account for violating Instagram's TOU against violating third parties' intellectual property rights based on a report.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[2] Exhibit Nos. 1-2, 4, and 5 and Figures 1-2 reflect machine translations using open source tooling to convert Russian text to English. Telephone numbers have been redacted from Figure 2.

**Figure 2: Defendant's Counterfeit Gucci Bedding**



(https://www.instagram.com/p/CAc84oeIeX9fqTSNlazZWSch67CohdmPRJT5tI0/)

51.     In December 2020, Gucci purchased a counterfeit handbag from Defendant's Website brends-msk.ru. Specifically, on December 11, 2020, Defendant sold Gucci's agent a counterfeit Gucci handbag through the Defendant Website brends-msk.ru and which had been promoted on Instagram. **Exhibits 5-6**. On January 6, 2021, Gucci's agent received the handbag from Defendant in San Francisco, California. Gucci examined the handbag and confirmed that it is counterfeit. **Figure 3** includes photographs of the counterfeit handbag Gucci purchased from the Defendant Website brends-msk.ru.

/ / /

/ / /

/ / /

/ / /

1

**Figure 3: Photographs of Defendant's Counterfeit Handbag Purchased by Gucci**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22



23    52.    Between December 14 and 16, 2020, Gucci's agent purchased additional counterfeit

24  goods from another of Defendant's Websites, luxprimer.ru, which Gucci's agent received in

25  California. Defendant or a representative of her counterfeit business assured Gucci's agent over text

26  message of the quality of the counterfeits, including a Gucci-branded t-shirt, handbag, and scarf

27  offered on the Defendant Website luxprimer.ru. **Exhibits 7-8**. Thereafter, Defendant sold Gucci's

28  agent the t-shirt, handbag, and scarf. **Exhibit 9**. On February 8, 2021, Gucci's agent received the

purchased products from Defendant in San, Francisco, California. Gucci has examined the products and confirmed that they are all counterfeit.

### G.   Facebook's Enforcement Efforts

53.   Since 2015, to protect Facebook and Instagram users and in response to several reports by Gucci and other brands, Facebook has taken multiple enforcement actions against Defendant for violating the Terms, including as recently as April 26, 2021. These include disabling her accounts on Facebook and Instagram, removing posts that promoted counterfeit products, and sending various notices to Defendant about her violations of the Terms.

54.   Nonetheless, Defendant continued to access and use Facebook and Instagram without permission and used deceptive tactics to avoid detection and further enforcement. For example, after Facebook disabled several accounts controlled by Defendant, Defendant used automation software that allowed her to create user accounts in bulk, while misrepresenting how she was accessing Facebook computers, to circumvent Facebook technological measures. Defendant used the new accounts she created to promote her counterfeit business.

55.   On April 21 and 26, 2021, Facebook disabled additional Facebook and Instagram accounts and Pages controlled by Defendant. In total, Facebook has removed more than 125 posts from accounts used by Defendant, and disabled more than 160 Facebook and Instagram accounts and Facebook Pages for violations of the Terms, including promoting counterfeit goods and using unauthorized automation software and other detection evasion techniques.

### FIRST CAUSE OF ACTION

### COUNTERFEITING (15 U.S.C. § 1114(1))

### (*By Gucci against Defendant*)

57.   Gucci repeats incorporates all other paragraphs as if fully set forth herein.

58.   Defendant's unauthorized use of the Gucci Marks for goods identical in type to those provided by Gucci under the Gucci Marks and for which the Gucci Marks are registered is likely to cause confusion or to cause mistake or to deceive Defendant's customers or potential consumers and the public as to the source or sponsorship of Defendant's goods. Consumers are likely to be misled

/ / /

into believing that Defendant's products are manufactured by, licensed by, sponsored by, approved by or otherwise associated with Gucci.

59.    Because Defendant's products incorporate the registered Gucci Marks without Gucci's consent, and the marks are used on and in connection with goods identical in type to those provided and registered by Gucci under the Gucci Marks, Defendant's GUCCI-branded products are counterfeit products under 34 U.S.C. § 1116(d).

60.    Upon information and belief, Defendant was on both actual and constructive notice of Gucci's exclusive rights in the registered Gucci Marks prior to Defendant's own use of the Gucci Marks. Defendant's use of Gucci Marks is willful, in bad faith, and with full knowledge of the goodwill and reputation associated with the Gucci Marks, and with full knowledge that Defendant has no right, license, or authority to use the Gucci Marks or any other mark confusingly similar thereto.

61.    Defendant's acts are intended to reap the benefit of the goodwill that Gucci has created in its Gucci Marks and constitutes counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

62.    Defendant's conduct has caused and is causing immediate and irreparable injury to Gucci and, unless enjoined by this Court, will continue to both damage Gucci and deceive the public. Gucci has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

#### (*By Gucci against Defendant*)

63.    Gucci repeats and incorporates all other paragraphs as if fully set forth herein.

64.    Defendant's unauthorized use of the Gucci Marks for goods identical in type to those provided by Gucci under the Gucci Marks is likely to cause confusion or to cause mistake or to deceive Defendant's customers or potential consumers and the public as to the source or sponsorship of Defendant's goods. Consumers are likely to be misled into believing that Defendant's products are manufactured by, licensed by, sponsored by, approved by, or otherwise associated with Gucci.

/ / /

65.     Upon information and belief, Defendant was on both actual and constructive notice of Gucci's exclusive rights in the registered Gucci Marks prior to Defendant's own use of the Gucci Marks. Defendant's use of Gucci Marks is willful, in bad faith, and with full knowledge of the goodwill and reputation associated with the Gucci Marks, and with full knowledge that Defendant has no right, license or authority to use the Gucci Marks or any other mark confusingly similar thereto.

66.     Defendant's acts are intended to reap the benefit of the goodwill that Gucci has created in its Gucci Marks and constitutes infringement of Plaintiff's federally registered trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

67.     Defendant's conduct has caused and is causing immediate and irreparable injury to Gucci and, unless enjoined by this Court, will continue to both damage Gucci and deceive the public. Gucci has no adequate remedy at law.

### THIRD CAUSE OF ACTION

### FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

### (*By Gucci against Defendant*)

68.     Gucci repeats and incorporates all other paragraphs as if fully set forth herein.

69.     Defendant's use of the Gucci Marks constitutes false designation of origin and false representation with respect to the origin of Defendant's goods. Defendant's use of the Gucci Marks is likely to cause confusion, mistake, or deception as to the source of Defendant's goods and is likely to create the false impression that Defendant is affiliated with Gucci or that her goods are authorized, sponsored, endorsed, licensed by, or affiliated with Gucci. Defendant's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70.     Defendant's use of the Gucci Marks in connection with her own products destroys the value, exclusivity and reputation of the Gucci Marks.

71.     Defendant's conduct has caused and is causing immediate and irreparable injury to Gucci and will continue both to damage Gucci and to deceive the public unless enjoined by this Court. Gucci has no adequate remedy at law.

/ / /

1

**FOURTH CAUSE OF ACTION**

2

**UNFAIR COMPETITION IN VIOLATION OF**

3

**CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ*.**

4

(***By Gucci against Defendant***)

5

72.     Gucci repeats and incorporates all other paragraphs as if fully set forth herein.

6

73.     Defendant's aforesaid conduct constitutes unfair competition with Gucci in violation

7

of Cal. Bus. & Prof. Code §§ 17200 *et seq*.

8

74.     Defendant's conduct has caused and is causing immediate and irreparable injury to

9

Gucci and will continue both to damage Gucci and to deceive the public unless enjoined by this

10

Court. Gucci has no adequate remedy at law.

11

**FIFTH CAUSE OF ACTION**

12

**COMMON LAW UNFAIR COMPETITION**

13

(***By Gucci against Defendant***)

14

75.     Gucci repeats and incorporates all other paragraphs as if fully set forth herein.

15

76.     Defendant is (i) promoting, advertising, distributing, selling, and/or offering for sale

16

goods bearing marks which are virtually identical, both visually and phonetically, to the Gucci

17

Marks, and (ii) creating and maintaining an illegal, ongoing marketplace enterprise operating in

18

parallel to the legitimate marketplace in which Gucci sells its genuine goods, in violation of

19

California's common law of unfair competition.

20

77.     Defendant's unauthorized use of the Gucci Marks for goods identical in type to those

21

provided by Gucci under the Gucci Marks is likely to cause confusion or to cause mistake or to

22

deceive Defendant's customers or potential consumers and the public as to the source or sponsorship

23

of Defendant's goods. Consumers are likely to be misled into believing that Defendant's products

24

are manufactured by, licensed by, sponsored by, approved by or otherwise associated with Gucci.

25

78.     Defendant's conduct has caused and is causing immediate and irreparable injury to

26

Gucci and will continue both to damage Gucci and to deceive the public unless enjoined by this

27

Court. Gucci has no adequate remedy at law.

28

/ / /

# SIXTH CAUSE OF ACTION

## BREACH OF CONTRACT UNDER CALIFORNIA LAW

### *(By Facebook against Defendant)*

79.    Facebook repeats and incorporates all other paragraphs as if fully set forth herein.

80.    Defendant created and used Facebook and Instagram accounts, and agreed to the Facebook TOS, Commercial Terms, and Instagram TOU.

81.    Defendant used various accounts for commercial purposes; namely, to promote her business and the Defendant Websites, where she sold counterfeit goods.

82.    Defendant breached Section 3.2.1 of the Facebook TOS, Section 2 of the Facebook Commercial Terms, and the Instagram TOU by taking the actions described above, including by using her Facebook and Instagram accounts to promote counterfeit Gucci goods for sale on the Defendant Websites.

83.    Defendant breached Section 3.1 of the Facebook TOS by creating multiple Facebook accounts, using the accounts for commercial purposes, and by using Facebook after Facebook previously disabled her accounts for violating the Facebook TOS.

84.    Defendant breached Section 3.2.3 of the Facebook TOS and the Instagram TOU by accessing Facebook and Instagram using automated means. Defendant did not have Facebook's permission to do so.

85.    Defendant breached the Instagram TOU by continuing to use Instagram after Facebook previously disabled her account for violating the Instagram TOU.

86.    Facebook has performed all conditions, covenants, and promises required of it in accordance with their agreements with Defendant.

87.    Defendant's many breaches have caused Facebook to incur damages in the amount of at least $75,000, in addition to an amount to be determined at trial.

88.    Facebook is entitled to an injunction against Defendant as set forth in the Prayer for Relief below to stop Defendant's persistent violations.

/ / /

/ / /

COMPLAINT; DEMAND FOR JURY TRIAL                                                                      - 21-
CASE NO. 3:21-cv-3036

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1.  That the Court enter judgment against Defendant that Defendant has:

    a.  Breached Defendant's contracts with Facebook in violation of California law;

    b.  Used the Gucci Marks in a manner that constitutes counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

    c.  Infringed the Gucci Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

    d.  Unfairly competed with Gucci in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

    e.  Unfairly competed with Gucci in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*.;

    f.  Unfairly competed with Gucci in violation of the common law of the state of California.

2.  That the Court enter a permanent injunction enjoining and restraining Defendant and her agents, servants, employees, successors, and assigns, and all other persons acting in concert with or conspiracy with any of them or who are affiliated with Defendant from:

    a.  Accessing or attempting to access Facebook's services, platforms, and computer systems, including Instagram;

    b.  Creating or maintaining any Facebook or Instagram accounts in violation of the Terms, including the Facebook TOS, Commercial Terms, and Instagram TOU;

    c.  Engaging in any activity, or facilitating others to do the same, that violates the Terms, including the Facebook TOS, Commercial Terms, and Instagram TOU, or other related policy referenced herein;

    d.  Using any reproduction, counterfeit, copy, or colorable imitation of the Gucci Marks, or any mark confusingly similar thereto (the "Prohibited

Marks") for or in connection with any goods or services not authorized by Gucci.

e.  Engaging in any course of conduct likely to cause confusion, deception, or to injure Gucci's business reputation or the Prohibited Marks;

f.  Using any false description or representation, including words or other symbols falsely to describe or represent Defendant's unauthorized goods or services as Gucci's, or sponsored or associated with Gucci, and from offering such goods or services into commerce;

g.  Manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products or packaging not authorized by Gucci that bear any simulation, reproduction, counterfeit copy, or colorable imitation of the Prohibited Marks;

h.  Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which is or may be likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by Defendant are in any manner associated or connected with Gucci, or are sold, manufactured, licensed, sponsored, approved, or authorized by Gucci;

i.  Secreting, destroying, altering, removing, or otherwise disposing of any products that infringe the Prohibited Marks, or any books or records that contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of such products;

j.  Effecting assignments or transfers forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Order, or any subsequent order or final judgment in this action;

k.  Using, linking, transferring, selling, or otherwise owning the domain names for the Defendant Websites, any social media or chat platforms or related apps, or any other domain name that incorporates, in whole or in part, any of the Prohibited Marks, or any domain name that is used in connection with any website that offers for sale or sells counterfeit Gucci merchandise;

l.  Creating, operating, owning, overseeing, or otherwise exercising control over any websites, social media, chat platforms or related apps in connection with selling, offering to sell, promoting, advertising, or otherwise depicting any counterfeit Gucci products;

m.  Creating, operating, owning, overseeing, or otherwise exercising control over any websites, social media, chat platforms or related apps in connection that embed, incorporate, include, or otherwise display any of the Prohibited Marks; and

n.  Processing any payments for or otherwise providing any online services related to the sale of counterfeit products featuring the Prohibited Marks, or any confusingly similar marks;

3.  Directing that Defendant turn over to Gucci for impoundment and eventual destruction, without compensation to Defendant, all materials in her possession or control that contain or refer to the Prohibited Marks, along with all articles by means of which such unauthorized copies may be reproduced.

4.  Directing that Defendant, pursuant to 15 U.S.C. § 1116(a), file with the Court and serve upon Plaintiffs, within thirty (30) days of the entry of injunction prayed for herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which she has complied with the permanent injunction.

5.  That Defendant account for and pay over to Gucci profits realized by Defendant by reason of Defendant's unlawful acts herein alleged and, that the amount of damages

1   for infringement of the Gucci Marks be increased by a sum not exceeding three times

2   the amount thereof as provided by law.

3   6.       In the alternative, that Gucci be awarded statutory damages of $2,000,000 for each

4   and every of the Prohibited Marks counterfeited by the Defendant.

5   7.       That Plaintiffs be awarded their costs, reasonable attorneys' fees and investigators'

6   fees incurred in this action, as permitted by law.

7   8.       That Plaintiffs be awarded pre-judgment interest on their judgment.

8   9.       That Plaintiffs be awarded such other and further relief as the Court may deem just

9   and proper.

11   Dated: April 26, 2021                          **KILPATRICK TOWNSEND & STOCKTON
                                                      LLP**

13                                    By:    _/s/  Dennis L. Wilson_
14                                            Dennis L. Wilson
                                              Caroline Y. Barbee
15                                     Attorneys for Plaintiffs
                                       FACEBOOK, INC. and GUCCI
16                                     AMERICA, INC.

17                                            Platform Enforcement and Litigation
18                                            Facebook, Inc.
                                              Jessica Romero
19                                            Tyler Smith
                                              Bridget Anne Freeman

21                                     -and-

22                                     Attorneys for Plaintiff
                                       GUCCI AMERICA, INC.

24                                            John P. Margiotta
                                              Nicole Lieberman
25                               FROSS ZELNICK LEHRMAN & ZISSU, P.C.
                                         151 W. 42nd Street, 17th Floor
26                                       New York, NY 10036
                                    Tel: (212) 813-5900; Fax: (212) 813-5901
27                                       Email: *jmargiotta@fzlz.com*
                                              *nlieberman@fzlz.com*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

Dated: April 26, 2021

**KILPATRICK TOWNSEND & STOCKTON LLP**

By:   /s/  Dennis L. Wilson
Dennis L. Wilson
Caroline Y. Barbee
Attorneys for Plaintiffs
FACEBOOK, INC. and GUCCI
AMERICA, INC.

Platform Enforcement and Litigation
Facebook, Inc.
Jessica Romero
Tyler Smith
Bridget Anne Freeman

-and-

Attorneys for Plaintiff
GUCCI AMERICA, INC.

John P. Margiotta
Nicole Lieberman
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 W. 42nd Street, 17th Floor
New York, NY 10036
Tel: (212) 813-5900; Fax: (212) 813-5901
Email: *jmargiotta@fzlz.com*
*nlieberman@fzlz.com*